## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

RICHARD ALVAREZ, *et al.*　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*　　　　Civil Action No. CCB-20-2626
　　　　　　v.　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
ALEXANDER AZAR, *Secretary*,　　　*
U.S. DEPARTMENT OF HEALTH　　　*
AND HUMAN SERVICES　　　　　*
　　　　　　　　　　　　　　　　*****

## MEMORANDUM

Now pending in this putative class action is the defendant's motion to dismiss the plaintiffs'
complaint. (ECF 11). The plaintiffs, Richard Alvarez and Sadiqa Brown, raise a single claim on
behalf of themselves and others similarly situated against the Secretary of the Department of
Health and Human Services ("HHS") for deprivation of property without due process in violation
of the Fifth Amendment to the United States Constitution. (ECF 1, Compl.). The motion to dismiss
has been fully briefed and no oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2021). For
the reasons stated herein, the court will grant the motion and dismiss the complaint.

## BACKGROUND

This case concerns employees of HHS who were subjected to adverse employment
actions, including demotion and termination, and who have been unable to receive final decisions
on their appeals of these actions because the Merit Systems Protection Board ("MSPB") has no
duly appointed members on its three-seat board, leaving the decisions of its administrative judges
subject to constitutional challenge under *Lucia v. SEC*, 138 S. Ct. 2044 (2018).

The experiences of the two named plaintiffs illustrate this dilemma. Alvarez, an employee
of the Food and Drug Administration, an agency within HHS, was issued a notice of proposed
demotion, which his employer finalized over his objections on October 28, 2018. (ECF 1, Compl.

at ¶ 8). Believing this adverse employment action to have been improper, he timely appealed the decision to the MSPB as permitted by federal statute. (*Id.* at ¶ 20). *See also* 5 U.S.C. §§ 7513, 7701 (certain federal employees subjected to adverse employment action entitled to post-deprivation hearing before MSPB). In the subsequent proceeding before the MSPB's administrative judge, HHS invoked the Supreme Court's decision in *Lucia* and filed a motion for reassignment to a properly appointed administrative judge or for dismissal until a new board is confirmed. (*Id.* ¶ 21).

In *Lucia*, the Supreme Court held that Administrative Law Judges employed by the Securities and Exchange Commission are inferior officers of the United States who must be appointed by the full Commission under the Constitution's Appointments Clause. 138 S. Ct. at 2049. At the time of the administrative enforcement action under review in *Lucia*, the SEC's administrative law judges had not been appointed by the full Commission (which, the Court noted, would count as a "head of department" under the Appointments Clause), but rather had been appointed by SEC staff members. As a result, the Court held that their appointments violated the Appointments Clause, and the SEC was required, in order to avoid constitutional violations, to provide new hearings with validly appointed officials. *Id.*

The MSPB administrative judge assigned to Alvarez's case granted HHS's motion and dismissed Alvarez's appeal without prejudice, indicating that the MSPB would automatically refile the appeal in 180 days. (*Id.* at ¶ 22). Thus began a cycle in which the appeal would be refiled 180 days later, HHS would file the same motion again, and the administrative judge would again dismiss the appeal without prejudice and indicate the MSPB would refile it in 180 days. (*Id.* at ¶¶ 23–26). This cycle has repeated in more or less the same fashion since then, (*Id.* at ¶ 27), including

once more since the filing of the Motion to Dismiss, (ECF 16-1, Pls.' Mem. P. & A. at 1–2; ECF 16-5, Exhibit 11). The MSPB still does not have any duly appointed board members.[1]

Brown's story is slightly different because she claimed discrimination on the basis of disability, which triggers a somewhat different statutory scheme, but the upshot for her was nevertheless similar. Brown was issued a notice of proposed termination, and she was removed from federal service on July 19, 2019. (ECF 1, Compl. at ¶¶ 11–12). She filed a complaint with the HHS Office of Equal Employment Opportunity ("EEO"), claiming her termination was due to discrimination on the basis of her disability and retaliation. (*Id.* at ¶ 13). EEO determined in a final decision issued April 28, 2020, that Brown's complaint lacked merit. (*Id.* at ¶ 14). She appealed this decision to the MSPB on June 1, 2020, and HHS filed a similar motion for reassignment to a properly appointed administrative judge or for dismissal until a new board is confirmed. (*Id.* at ¶¶ 28–29). The administrative judge dismissed the appeal without prejudice and indicated the MSPB would automatically refile the appeal in 180 days. (*Id.* at ¶ 30). As in Alvarez's case, the pattern has repeated itself, including once again since the filing of this Motion to Dismiss. (ECF 16-1, Pls.' Mem. P. & A. at 1–2; ECF 16-6, Exhibit 12).

The problem, of course, is not exclusive to Brown and Alvarez. The plaintiffs note that since August 5, 2019, HHS sought and was granted dismissal without prejudice approximately 249 times in appeals filed by at least 98 current or former employees of HHS. (ECF 16-2, Pls.' Suppl. Mem. Supp. Pls.' Opp'n Defs.' Mot. Dismiss at 2–3). In light of the foregoing, the plaintiffs

---

[1] Change, though not guaranteed, may be on the horizon. President Biden has nominated three people to the Board, enough to constitute a quorum should the Senate confirm the nominees. *See* Nominations Sent to the Senate, The White House, June 24, 2021, https://www.whitehouse.gov/briefing-room/statements-releases/2021/06/24/nominations-sent-to-the-senate-23/ (accessed August 13, 2021); President Biden Announces Two Key Nominations, September 2, 2021, https://www.whitehouse.gov/briefing-room/statements-releases/2021/09/02/president-biden-announces-two-key-nominations/ (accessed September 21, 2021).

filed this putative class action on September 11, 2020, raising a single claim against HHS for violation of their due process rights under the Fifth Amendment. They allege that HHS has "repeatedly argued before the MSPB that MSPB administrative judges lacked the delegated authority to adjudicate appeals filed by current or former []HHS employees," and that "[a]s a result" they "can neither obtain review" of HHS's actions "nor relief from the adverse consequences" of those actions. (ECF 1, Compl. at ¶¶ 42, 44). This, they contend, violated their Fifth Amendment rights to due process "by depriving them of their property interest without providing a post-deprivation hearing within a meaningful time." (*Id.* at ¶ 60).   They seek declaratory and injunctive relief. (*Id.* at 11). HHS has filed a motion to dismiss for lack of jurisdiction and for failure to state a claim. (ECF 11). That motion is now fully briefed[2] and ripe for resolution.

## LEGAL STANDARD

Issues of standing are analyzed under the rubric of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  *See Taubman Realty Grp. Ltd. P'ship v. Mineta*, 320 F.3d 475, 480–81 (4th Cir. 2003). Plaintiffs bear the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A plaintiff must prove standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Ordinarily, "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing

---

[2] The plaintiffs moved for leave to supplement their opposition to HHS's motion to dismiss, noting that HHS would not oppose as long as the Agency could respond. (ECF 16, Pls.' Mot. Leave File Suppl. Mem. Supp. Pls.' Opp'n Def.'s Mot. Dismiss at 1–2). The court grants this motion and has considered the supplemental material in issuing this decision. Because the court is granting the Agency's motion, no response is required.

courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Pacific Legal Foundation v. Goyan*, 664 F.2d 1221, 1223 (4th Cir. 1981). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). A Rule 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart,* 680 F.3d 359, 365 (4th Cir. 2012)).

## DISCUSSION

HHS raises four arguments in support of its motion to dismiss the plaintiffs' complaint: (1) the plaintiffs lack standing; (2) HHS provided all the process that was due; (3) Brown can seek judicial review even absent a final decision of the MSPB; and (4) the Federal Circuit has exclusive jurisdiction over Alvarez's claim. The court will begin, as it must, by deciding whether the plaintiffs have standing to raise their claims in this court, and only if necessary will it then evaluate HHS's other arguments.

Federal courts are courts of limited jurisdiction empowered by the United States Constitution to hear only certain cases and controversies. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546–47 (2016). The doctrine of standing is one mechanism which tests whether an action presents a justiciable case or controversy within the bounds of the authority conferred on the courts by Article III. *See Lujan*, 504 U.S. at 560. To have standing to assert a claim in federal court, a plaintiff must demonstrate (1) an injury in fact that is concrete and particularized, and actual and imminent rather than conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, such that the injury is fairly traceable to the defendant's actions, and not the independent action of a third party; and (3) a likelihood that the injury will be redressed by a favorable decision. *See Spokeo*, 136 S. Ct. at 1547–48; *Lujan* at 560. In evaluating a class action complaint, "we analyze standing based on the allegations of personal injury made by the named plaintiffs." *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018) (internal quotation marks omitted).

In this case, the plaintiffs claim that HHS deprived them of due process because, "[a]s a result of Defendant's motions to dismiss without prejudice in MSPB appeals," they can "neither obtain review" of HHS's adverse employment actions "nor relief from the adverse consequences"

6

of those actions. (ECF 1, Compl. at ¶ 44). Thus, in their complaint, they characterize their injury as a lack of post-deprivation process. The court assumes without deciding that this constitutes an injury in fact sufficient to satisfy Article III.[3]

Still, the court is unable to discern how this deprivation is fairly traceable to the sole named defendant, HHS. The plaintiffs acknowledge in their complaint that pursuant to federal law the decision "whether to dismiss an appeal without prejudice is committed to the sound discretion" of the MSPB administrative judge—each of whom in this case exercised his or her discretion to "grant[] Defendant's motions to dismiss[.]" (*Id.* at ¶¶ 32, 43 (quoting 5 C.F.R. § 1201.29(b)). Furthermore, an administrative judge of the MSPB may grant dismissal without prejudice "on the judge's own motion or upon request by either party." 5 C.F.R. § 1201.29(b). To be sure, HHS's decision to file motions to dismiss is part of the unfortunate cycle in which the plaintiffs are stuck, and in that sense the injury is in some sense "traceable" to HHS. But the court cannot conclude that the assumed lack of post-deprivation process is "fairly traceable" to HHS's filings in the way the Article III standing analysis contemplates.

The "fairly traceable" requirement does not strictly demand proximate causation, but there must be a "sufficient connection between the plaintiff's injury and the conduct of the defendant, such that a court ought to assert jurisdiction over the dispute." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 315–16 (4th Cir. 2013); *see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (fairly traceable element requires "genuine nexus" between an injury and a defendant's allegedly illegal conduct). This requirement is

---

[3] It is worth noting that an injury in fact is not certain here. The Fourth Circuit Court of Appeals stated in a related context that "it can't be that a party is injured whenever its litigation opponent puts up a robust . . . defense" since "[a] key purpose of standing . . . is to preserve the vitality of the adversarial process." *Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, 997 F.3d 149, 155 (4th Cir. 2021) (internal quotation marks omitted).

designed in part to ensure that an injury is "not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).

For example, that third party might be some government entity other than the one being sued. In *Jacobson v. Florida Secretary of State*, the Eleventh Circuit Court of Appeals considered an action brought by Democratic voters against the Florida Secretary of State to enjoin enforcement of a statute requiring the candidate of the party that won the last gubernatorial election to appear first on the state's ballots. *See* 974 F.3d 1236, 1242 (11th Cir. 2020). The court held that even if the voters had demonstrated an injury in fact, they would still lack standing because any injury would be "neither traceable to the Secretary nor redressable by relief against her." *Id.* at 1253. The court reasoned that since the voters "contend that they are injured because Republicans, not Democrats, appear first on the ballot," "for them to have standing, the order in which candidates appear on the ballot must be traceable to the Secretary—the only defendant in th[e] action." *Id.* Yet under Florida law, the supervisors of the county board of elections, independently of the Secretary, are tasked "with printing the names of candidates on ballots" in a manner prescribed by statute; the Secretary is responsible only for certifying the names of nominees to the supervisors of each county. *Id.* The court's conclusion that any injury from the order of names on the ballot was not traceable to the Secretary rested on "the reality that the Supervisors are independent officials under Florida law who are not subject to the Secretary's control." *Id.*

*Doe v. Obama* is also instructive. There, the court addressed the standing of a group of plaintiffs who, concerned over the destruction of embryos in stem cell research, sued the Obama Administration to challenge its regulations expanding federal funding for stem cell research. 631 F.3d 157, 159 (4th Cir. 2011). The Fourth Circuit Court of Appeals held that even if the plaintiffs did satisfy the injury in fact requirement, they could not establish that any injury was fairly

traceable to the Administration's executive orders. *Id.* at 161. Specifically, the court reasoned that the "mere fact that the government permits private donors to choose to donate their embryos for research does not make that decision fairly traceable" to the government because the government only funded research using stem cells which were (1) created using in vitro fertilization for reproductive purposes, (2) no longer in use, and (3) donated by individuals for research purposes. *Id.* at 162. Thus, the government's actions were not fairly traceable to the plaintiffs' injuries because "the independent decision of biological parents to donate embryos for research is an intervening cause[.]" *Id.* at 161.

In this case, the chain of causation linking HHS's actions to the plaintiffs' injuries is too tenuous to support constitutional standing given the intervening actions of the MSPB administrative judge. The plaintiffs do not allege the MSPB is under any obligation to accept the arguments made by HHS in adversarial proceedings—nor would such an allegation be plausible. In fact, the administrative judges of the MSPB are authorized to dismiss appeals without prejudice on their own motion. *See* 5 C.F.R. § 1201.29(b). These circumstances are akin those in *Jacobson* and *Doe*: in both cases, the named defendant technically was part of the causal chain, but ultimately the actions of a third party not named as a defendant in the litigation was necessary to effectuate the alleged injuries. So too here: Though HHS has filed motions to dismiss pursuant to *Lucia*, the administrative judges alone are tasked with deciding the merits of these motions—and indeed, may decide to dismiss *sua sponte* even without a party having filed a motion. The plaintiffs' injuries here are thus properly traced to "the independent action of some third party not before the court."[4]

---

[4] The court does not mean to suggest that the third party responsible is necessarily the MSPB. As another court has stated in the context of a suit seeking a writ of mandamus to compel the MSPB to act on a similar appeal of an adverse employment decision made by a federal agency, "the root cause" of the plaintiff's inability to obtain review is "beyond the MSPB's control" insofar as the MSPB was not "intentionally delaying" either the resolution of various *Lucia* challenges or "the appointment

*Lujan*, 504 U.S. at 560. Consequently, it is merely speculative to assert that HHS's decision to file motions in adversarial proceedings before the MSPB was the cause of the plaintiffs' injuries. The court declines to hold that the filing of a motion in an adversarial proceeding before a neutral arbiter is a sufficient cause of the due process violations alleged in this case to support standing.[5] HHS is in the same position before the MSPB as HHS is—neither controls the appellate process but rather both are subject to it, and the filing of a motion appears to this court as part of the process rather than the deprivation of process.[6] Accordingly, the plaintiffs' inability to obtain review of HHS's employment decisions is not fairly traceable to HHS itself, and the action must be dismissed.

## CONCLUSION

The court sympathizes with the named plaintiffs and others faced with a similar Sisyphean predicament. Still, the federal courts are courts of limited jurisdiction authorized to wield only that

---

and confirmation of a quorum of board members[.]" *Davis v. Merit Sys. Prot. Bd.*, No. 20-CV-2139, 2020 WL 6565224, at *9 (N.D. Ill. Nov. 9, 2020).

[5] The plaintiffs cite *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton* for the proposition that a defendant need not be the only party responsible for an injury for a plaintiff to establish standing. 422 F.3d 490, 500 (7th Cir. 2005). This is true as far as it goes, but even if the court were to find that multiple parties are responsible for the plaintiffs' injuries, the plaintiffs would still need to show a sufficient connection or a genuine nexus between HHS's actions and the injury alleged—namely, the lack of post-deprivation process. This is not a case, for example, where "the plaintiff suffers an injury that is produced by [the] determinative or coercive effect of the defendant's conduct upon the action of someone else," such that the traceability requirement is satisfied. *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand and Lansdowne, LLC*, 713 F.3d 187, 197 (4th Cir. 2013) (internal quotation marks omitted).

[6] The plaintiffs urge the court not to parse the actions of HHS and the MSPB, stating that from their perspective "their property was taken and they have not had a timely opportunity afforded by the Federal government to be heard on this issue[.]" (ECF 14-1 at 3, n.2). Yet the plaintiffs did not bring suit against the "Federal government" but rather against a department of one branch of that government. The question is whether the plaintiffs have standing to raise their claims against HHS in particular, not whether they have standing to raise their claims against the Federal government in general.

power specifically conferred by the Constitution and laws of Congress. The plaintiffs do not present a justiciable case or controversy and they must seek their remedy elsewhere. For these reasons, the court will grant HHS's motion to dismiss. A separate Order follows.


9/23/2021
Date

/s/
Catherine C. Blake
United States District Judge